# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 12-mc-00553 (JFB)

IN RE GRAND JURY SUBPOENA DATED FEBRUARY 2, 2012,

UNITED STATES OF AMERICA

Movant

VERSUS

JOHN DOE

Respondent.

**MEMORANDUM AND ORDER**
December 10, 2012

JOSEPH F. BIANCO, District Judge:

The United States of America (the "government") seeks an order compelling John Doe ("respondent") to comply with a grand jury subpoena dated February 2, 2012 (the "Subpoena"). Respondent opposes the government's motion on two grounds: (1) the government already possesses the records sought by the Subpoena and is improperly using the grand jury's subpoena power to prepare for trial; and (2) compelling compliance with the Subpoena would violate respondent's Fifth Amendment privilege against self-incrimination. For the reasons set forth on the record on November 20, 2012 and provided in detail herein, the Court orders respondent to comply with the Subpoena.

Specifically, the Court finds that no evidence supports the conclusion that the government is already in possession of the requested documents or that the government has issued the Subpoena for purposes of preparing for trial. Additionally, the Court holds that the requested documents fall within the required records exception and, thus, are outside the scope of respondent's Fifth Amendment privilege.

I. BACKGROUND

As part of its investigation, the grand jury in the Eastern District of New York issued a subpoena to respondent that sought the production of foreign bank records that account holders are required by law to keep and maintain for a period of five years. In particular, the Subpoena sought the following foreign bank account records:

Any and all records required to be maintained pursuant to 31 C.F.R. § 1010.420 (formerly 31 C.F.R. § 103.32) for the past 5 years relating to foreign financial bank, securities, or other financial accounts in a foreign country for which you had/have a financial interest in, or signature or other authority over and are required by law to file a Report of Foreign Bank and Financial Account (FBAR). The records required to be maintained pursuant to 31 C.F.R. § 1010.420 (formerly 31 U.S.C. § 103.32) include records that contain the name in which each such account is maintained, the number or other designation of such account, the name and address of the foreign bank or other person with whom such account is maintained, the type of such account, and the maximum value of each such account during the reporting period.

The government served respondent with the Subpoena on February 8, 2012, and the Subpoena required compliance by February 23, 2012. Respondent has failed to respond to the Subpoena. On August 17, 2012, the government moved to compel respondent's compliance with the Subpoena. On September 27, 2012, respondent filed his opposition to the government's motion. On October 9, 2012, the government filed its reply. The Court heard oral argument on November 20, 2012 and, following the argument, issued an oral decision granting the government's motion to compel.

II. DISCUSSION

A. Issuance of Subpoena

Respondent argues that the government's motion to compel should be denied because (1) the government already possesses the records sought by the subpoena, and (2) the government may not use the grand jury to prepare for trial. For the reasons set forth below, the Court concludes that these arguments have no merit.

As a threshold matter, although courts must ensure that the grand jury process is not being abused by the government, it is not the role of the courts to micromanage the government's presentation of evidence to the grand jury. *See, e.g., United States v. Kleen Laundry & Cleaners, Inc.*, 381 F. Supp. 519, 521-22 (E.D.N.Y. 1974) ("It is now the United States Attorney who gathers the evidence for later presentation to the grand jury. . . . So broad is his role in practice that courts are loath to review prosecutorial actions."). Having carefully reviewed the submissions, the Court finds no evidence of abuse of the grand jury process by the government in any way.

First, respondent's argument that the government already possesses the information requested by the Subpoena is based upon sheer speculation and is denied by the government. (*See* Gov't Reply Mem. of Law at 2) ("The respondent's argument begins with the false premise that the government already possesses the records sought by the Subpoena."); *(id.)* ("The respondent . . . has no basis for his contention that the government 'already possesses the documents sought by the subpoena.'" (quoting Resp't's Mem. of Law in Opp'n at 3)). Although the government attached to its motion to compel a selection of documents from one foreign bank account with dates spanning from 1992 to August 2008, those documents are hardly (on their face) co-extensive with the scope of the Subpoena. Specifically, the Subpoena required the production of documents for a five-year period prior to February 2012. Thus, the government's selection does not contain any documents for the majority of the five-year period covered by the

2

Subpoena. Moreover, there are no documents from other foreign banks at which the respondent, unbeknownst to the government, may have had accounts. In other words, it is self-evident that the government would have no way of ensuring that all such records from *all* foreign bank accounts – for which respondent has a financial interest, or is a signatory, or has authority over – have been uncovered unless respondent complies with the Subpoena. In short, there is no reason to believe that the government already possesses all documents sought by the Subpoena. Additionally, the fact that the government has some of respondent's foreign bank records clearly does not preclude it from seeking all such relevant foreign bank records. *See, e.g., United States v. Dionisio*, 410 U.S. 1, 13 (1973) ("The grand jury may well find it desirable to call numerous witnesses in the course of an investigation. It does not follow that each witness may resist a subpoena on the ground that too many witnesses have been called.").

Respondent seeks to counter this proposition by citing to *Application of Linen Supply Cos.*, 15 F.R.D. 115, 119 (S.D.N.Y. 1953). However, that decision is clearly distinguishable. In that case, the court held that the recipients of a grand jury subpoena did not need to provide the originals of documents for which the government already possessed copies. *Id.* at 119. Here, the grand jury has not received any documents from respondent and, thus, it cannot be determined that the grand jury will have access to all potentially responsive documents. Accordingly, the above-referenced case is inapposite to the instant situation.

Respondent's second argument, that the grand jury is being used by the government to prepare for trial, is similarly unavailing. This argument is a legal non-starter in the instant case because the grand jury has not returned an indictment. Stated differently, the concern that the government is abusing the grand jury by preparing for trial only arises after the grand jury has returned an indictment. *See, e.g., United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994) ("It is, of course, improper for the Government to use the grand jury for the sole or dominant purpose of preparing for trial *under a pending indictment*." (emphasis added)); *see also United States v. Ohle*, 678 F. Supp. 2d 215, 233 (S.D.N.Y. 2010) (same); *United States v. Bin Laden*, 116 F. Supp. 2d 489 (S.D.N.Y. 2000) (citing cases). Here, there are no pending charges that have been returned by the grand jury; moreover, there is no trial. In short, no evidence supports the conclusion that the government has issued the Subpoena for the sole or dominant purpose of preparing for a trial, particularly when no charges have yet been brought. For this reason, respondent's argument does not provide a basis to deprive the government, and the grand jury, of these potentially relevant documents.

B. The Fifth Amendment and the Required Records Exception

Respondent next argues that, if this Court were to compel compliance with the Subpoena, respondent's rights under the Fifth Amendment would be violated. Respondent additionally asserts that the required records exception is not applicable. For the following reasons, the Court disagrees with respondent's argument and concludes that the required records exception overrides any Fifth Amendment privilege.

1. Legal Standard

The Fifth Amendment's protection against self-incrimination is well-

3

established. *See* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself."). Its protections are triggered "when the accused is compelled to make a [t]estimonial [c]ommunication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976); *see also United States v. Hubbell*, 530 U.S. 27, 34 (2000). Courts have interpreted what constitutes a "testimonial communication" broadly. In *Fisher*, the Supreme Court stated that "[t]he act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced." 425 U.S. at 410; *see also United States v. Doe*, 465 U.S. 605, 612 (1984) ("A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect."). For instance, by complying with a subpoena, the subpoena recipient may "tacitly concede[] the existence of the papers demanded and their possession or control," as well as his or her "belief that the papers are those described in the subpoena." *Fisher*, 425 U.S. at 410. The question thus becomes whether the "tacit averments" made through the production of the requested materials are both "'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment." *Id.*; *see also In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999*, 191 F.3d 173, 178 (2d Cir. 1999) ("[I]t is now settled that an individual may claim an act of production privilege to decline to produce documents, the contents of which are not privileged, where the act of production is, itself, (1) compelled, (2) testimonial, and (3) incriminating."). The answer to this question will often turn on the particular facts and circumstances of a given case. *See Fisher*, 425 U.S. at 410.

Although the Fifth Amendment guards an individual from self-incrimination by barring the government from "compelling a person to give 'testimony' that incriminates him," *id.* at 409, its protective shield is not all-encompassing. The Supreme Court has made clear that the privilege against self-incrimination does not prevent the government from imposing record-keeping and inspection requirements as part of a valid regulatory scheme. *See Shapiro v. United States*, 335 U.S. 1, 32-33 (1948). Generally referred to as the required records exception, the government may mandate the retention or inspection of records as "to public documents in public offices, [and] also [as] to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established." *Id.* at 17 (quoting *Wilson v. United States*, 211 U.S. 361, 380 (1911)) (no internal quotation marks).

The rationale underlying the required records exception is "twofold." *In re Two Grand Jury Subpoenae Duces Tecum*, 793 F.2d 69, 73 (2d Cir. 1986). First, participation in an activity that, by law or statute, mandates record-keeping may be deemed a waiver of the act of production privilege, "at least in cases in which there is a nexus between the government's production request and the purpose of the record-keeping requirement." *Id.* Second, because such record-keeping is done pursuant to legal mandate (as opposed to an individual's voluntary choice), "the record-holder 'admits' little in the way of control or authentication by producing them." *Id.* (quoting *In re Grand Jury Subpoena Served Upon Underhill*, 781 F.2d 64, 65 (6th Cir. 1986)); *cf. In re Grand Jury Investigation M.H.*, 648 F.3d 1067, 1071-72 (9th Cir.

4

2011) (stating that "where documents are *voluntarily* created and kept, compelling their disclosure does not implicate the privilege against self-incrimination," but "[w]here documents are *required* to be kept and then produced, they are arguably compelled," and further noting that "the privilege does not extend to records required to be kept as a result of an individual's voluntary participation in a regulated activity").

In order for documents "[t]o constitute 'required records' [they] must satisfy a three-part test," commonly referred to as the *Grosso* test, first set forth in the Supreme Court's *Grosso v. United States* decision: "(1) the requirement that [records] be kept must be essentially regulatory, (2) the records must be of a kind which the regulated party has customarily kept, and (3) the records themselves must have assumed 'public aspects' which render them analogous to public documents." *In re Doe*, 711 F.2d 1187, 1191 (2d Cir. 1983) (citing *Grosso v. United States*, 390 U.S. 62, 67-68 (1968)); *see also Rajah v. Mukasey*, 544 F.3d 427, 442 (2d Cir. 2008) (stating "the Fifth Amendment's act of production privilege does not cover records that are required to be kept pursuant to a civil regulatory regime").

The record-keeping regulation that is at the center of this dispute is the Currency and Foreign Transactions Reporting Act of 1970, Pub. L. 91-508, 84 Stat. 1118 (1970), generally referred to as the Bank Secrecy Act ("BSA"). The purpose of this regulation is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 5311. Section 241(a) of the Act provides that the "Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency." *Id.* § 5314(a). Pursuant to this instruction, the Secretary of the Treasury has implemented regulations that require U.S. citizens and residents to disclose their foreign bank accounts, *see* 31 C.F.R. § 1010.350; such regulations also mandate that "each person having a financial interest in or signature or other authority over any such account" retain such records for at least five years, making them "available for inspection as authorized by law," *id.* § 10101.420.

This Court has previously held that foreign bank records that are required to be maintained under the BSA, pursuant to 31 C.F.R. § 1010.420, 31 U.S.C. § 5311 *et seq.*, fall within the required records exception to the act of production privilege under the Fifth Amendment. *See In re Grand Jury Subpoena Dated September 9, 2011*, No. 2:11-mc-00747-JFB (E.D.N.Y. Dec. 30, 2011). That analysis, incorporated below, applies with equal force to the Subpoena at issue in this case. At the time of the Court's prior decision, the Second Circuit had not yet decided the issue; other courts, however, including the Ninth Circuit and several district courts, had reached the same conclusion. *See, e.g., In re Grand Jury Investigation M.H.*, 648 F.3d 1067 (9th Cir. 2011); *In re Grand Jury Subpoena No. 10-04-400*, No. GJ 10-4 (D. Az. May 18, 2011) (annexed to government's motion papers); *In re Grand Jury Subpoenas dated January 3, 2011*, No. FGJ 10-403-073 (S.D. Fl. Mar. 4, 2011) (annexed to government's motion papers). Moreover, since this Court's decision in December 2011, both the Fifth and Seventh Circuits have reached the same conclusion. *See In re Grand Jury Subpoena*, 696 F.3d 428 (5th Cir. 2012); *In re Special*

5

*February 2011-1 Grand Jury Subpoena Dated September 12, 2011,* 691 F.3d 903 (7th Cir. 2012). The Court finds the analysis contained in the above-referenced cases, although not binding, to be persuasive.[1]

For the reasons set forth below, the Court concludes that the government has met its burden of proving that the foreign financial account documents sought from respondent, which the BSA requires respondent to maintain, satisfy the three *Grosso* requirements. Accordingly, the required records exception applies, and the documents fall outside the purview of the Fifth Amendment.

a. "Essentially Regulatory"

The first prong of the *Grosso* test requires that the statutory scheme giving rise to the record-keeping requirement be "essentially regulatory" and not criminal in nature. In *United States v. Dichne*, the Second Circuit held that a similar recordkeeping requirement of the BSA did not violate the Fifth Amendment's privilege against self-incrimination. 612 F.2d 632, 638-41 (2d Cir. 1979).

The provision at issue in *Dichne* required anyone exporting or importing monetary instruments worth more than $5,000 (now $10,000) to file a report with the Secretary of the Treasury. *See* 31 U.S.C. 1101. The Second Circuit noted that because "the transportation of such amounts of currency is by no means an illegal act, the District Court was correct in its finding that the reporting requirement was not addressed to a highly selective group inherently suspect of criminal activities." *Dichne*, 612 F.2d at 639 (internal quotation marks omitted). The court therefore held that "[i]n view of the lack of a direct linkage between the required disclosure and the potential criminal activity, and in view of the fact that the statute is not directed at an inherently suspect group, we conclude that the reporting requirement does not present such a substantial risk of incrimination so as to outweigh the governmental interest in requiring such a disclosure." *Id.* at 641 (internal quotation marks omitted). Consequently, the statute did not violate the Fifth Amendment's privilege against self-incrimination. *Id.*; *see also United States v. Sturman*, 951 F.2d 1466, 1487 (6th Cir. 1991) ("The Bank Secrecy Act applies to all persons making foreign deposits, most of whom do so with legally obtained funds. The requirement is imposed in the banking regulatory field which is not infused with criminal statutes. In addition, the disclosures do not subject the defendant to a real danger of self-incrimination since the source of the funds is not disclosed . . . . Thus, the defendant has failed to show that the Bank Secrecy Act violated any individual right [that] . . . *Grosso* seek to protect.").

Likewise, the provision at issue here, 31 C.F.R. § 1010.420, applies to hundreds of thousands of foreign bank accounts.[2] "There is nothing inherently illegal about having or being a beneficiary of an offshore foreign banking account." *In re Grand Jury Investigation M.H.*, 648 F.3d at 1074. Because the record-keeping requirements of 31 C.F.R. § 1010.420 do not target inherently illegal activity, the provision is

---

[1] The language of the Subpoena in this case is identical in all material respects to those contained in the above-referenced cases.

[2] *See* Treasury Inspector General for Tax Administration, "New Legislation Could Affect Filers of the Report of Foreign Bank and Financial Accounts, but Potential Issues are Being Addressed," Ref. #2010-30-125 (Sept. 29, 2010) at 7, *available at* http://www.treasury.gov/tigta/auditreports/2010reports/201030125fr.pdf.

essentially regulatory in nature.³ *See In re Grand Jury Subpoena No. 11-20750*, 696 F.3d at 435 (holding that "[b]ecause the BSA's record-keeping requirements serve purposes unrelated to criminal law enforcement and because the provisions do not exclusively target people engaged in criminal activity, we conclude that the requirements are 'essentially regulatory,' satisfying the [required records exception]'s first prong"); *In re Special February 2011-1 Grand Jury Subpoena Dated September 12, 2011*, 691 F.3d at 909 (finding first prong of *Grosso* test met); *In re Grand Jury Investigation M.H.*, 648 F.3d at 1075 (holding that records kept under 31 C.F.R. § 1010.420 were "essentially regulatory" because the information sought was "not inherently criminal," and therefore, "being required to provide that information would generally not establish a significant link in a chain of evidence tending to prove guilt."); *In re Grand Jury Subpoena No. 10-04-400*, No. GJ 10-04 (D. Ariz. May 18, 2011) (stating reporting requirements of 31 C.F.R. § 1010.420 are "essentially regulatory" because they are "directed to the public at large and are intended to advance the important public purposes inherent in the regulatory tax scheme"); *In re Grand Jury Subpoenas dated January 3, 2011*, No. FGJ 10-403-073 (S.D. Fla. Mar. 4, 2011) (stating "record-keeping and reporting requirements of the BSA have consistently been determined to be regulatory, and not criminal, in nature").

For these reasons, the Court concludes that the requested foreign financial records satisfy the first prong of the *Grosso* test and are "essentially regulatory" in nature.

---

³ Indeed, the plaintiff's arguments to attempt to show otherwise are similar to those considered and rejected by the Fifth Circuit in *In re Grand Jury Subpoena No. 11-20750*, 696 F.3d at 434-35.

b. "Customarily Kept"

*Grosso*'s second prong asks whether the records are typically kept in connection with the regulated activity. The Ninth Circuit has held that the information required to be kept by 31 C.F.R. § 1010.420 is "basic account information that bank customers would customarily keep, in part because they must report it to the IRS every year as part of the IRS's regulation of offshore banking, and in part because they need the information to access their foreign bank accounts." *In re Grand Jury Investigation M.H.*, 648 F.3d at 1076. The Fifth Circuit has concluded similarly, stating that records are "customarily kept" in satisfaction of the required records exception's second prong where they "are of the same type that the witness must report annually to the IRS pursuant to the IRS's regulation of offshore banking: the name, number, and type of account(s), the name and address of the bank where an account is held, and the maximum value of the account during the reporting period." *In re Grand Jury Subpoena No.11-20750*, 696 F.3d at 435; *see also In re Grand Jury Investigation M.H.*, 648 F.3d at 1075 (holding in a nearly identical case that second prong of required records doctrine met). This Court agrees. Accordingly, the records the Subpoena seeks are of a kind "customarily kept" by respondent, thereby satisfying the second prong of the *Grosso* test.

c. "Public Aspects"

The third *Grosso* factor requires that the requested records "have assumed 'public aspects' which render them at least analogous to public documents." *Grosso*, 390 U.S. at 68. Respondent asserts that an individual's personal financial records do not possess sufficient public aspects to satisfy this prong of the test. (Resp't's Mem. of Law in Opp'n at 22.) Generally, the fact

"that the information sought is traditionally private and personal as opposed to business-related does not automatically implicate the Fifth Amendment." *In re Grand Jury Subpoena No. 11-20750*, 696 F.3d at 436; *see also In re Grand Jury Investigation M.H.*, 648 F.3d at 1077. However, the Ninth Circuit accurately noted that "[w]here personal information is compelled in furtherance of a valid regulatory scheme, as is the case here, that information assumes a public aspect." *In re Grand Jury Investigation M.H.*, 648 F.3d at 1077.

Additionally, the fact that 31 C.F.R. § 1010.420 requires foreign bank-account holders to simply keep records, but not to file those records with the government, does not extinguish the public aspects of the records. *Id.* Indeed, the Supreme Court has acknowledged that there is no distinction between those records required to be kept by law and those regularly or "easily accessed" by the government. *See Marchetti v. United States*, 390 U.S. 39, 56 n.14 (1968) ("We perceive no meaningful difference between an obligation to maintain records for inspection, and such an obligation supplemented by a requirement that those records be filed periodically with officers of the United States."). Thus, the Court finds that the record-keeping requirements of 31 C.F.R. § 1010.420 have "public aspects," satisfying the third and final prong of the *Grosso* test. *See In re Special February 2011-1 Grand Jury Subpoena*, 691 F.3d at 909 (concluding that respondent could not resist a subpoena on Fifth Amendment grounds because the requested records met the three prongs of the required records exception).[4]

In sum, because all three prongs of the *Grosso* test are met, the required records exception is applicable, and the Fifth Amendment's safeguards are not available to respondent in this instance.

### C. Availability of Records From Foreign Banks

The Court briefly addresses respondent's argument that the government in this case could have sought to obtain the requested documents by means of foreign request, specifically, via such foreign treaties as "the Foreign Account Tax Compliance Act, new and/or updated bilateral tax treaties permitting the expanded exchange of tax information, Mutual Legal Assistance Treaties, Tax Information Exchange Agreements, and Simultaneous Criminal Investigation Programs." Resp't's Mem. of Law in Opp'n at 8. At oral argument, the government explained the impracticalities of such a process, emphasizing in particular the length of time generally associated with such requests, as well as the government's lack of information throughout the entire request process to the foreign government.[5]

---

[4] The Court also rejects respondent's argument that the required records exception is only triggered where there is some level of licensure or heightened government regulation at issue. (*See* Resp't's Mem.

of Law in Opp'n at 8) (stating "the required records exception to the act of production privilege stems from exigent circumstances not present in the regulatory scheme issued under the [BSA]"). The Court agrees with the government's position, stated at oral argument, that it is up to Congress to determinate the appropriate level of regulation that should accompany a required records mandate. The Court likewise notes that the Fifth Circuit held similarly in its most recent decision, stating "adopting a rule that the legitimacy of a record-keeping requirement depends on Congress first enacting substantive restrictions would lead to absurd results." *In re Grand Jury Subpoena*, 696 F.3d at 436.

[5] The government offered several examples at oral argument of factors that would hinder the government's ability to obtain records through foreign request. These examples include, but are not limited to, the transmission and translation of the government's request to the appropriate foreign

8

As the government accurately noted, Congress enacted the BSA so as to ameliorate the difficulties and challenges associated with obtaining records by means of a foreign treaty. The Court agrees with the government and finds no reason as to why a significantly longer process, with uncertain results, should have to be used in the instant case. There is no requirement that the government only subpoena foreign bank records from an individual as a last resort when other efforts to obtain such documents from the foreign bank have been exhausted. Such a rule has no basis in the law and could significantly delay criminal investigations. Accordingly, the Court rejects that argument by respondent.

### III. CONCLUSION

Having carefully reviewed the respondent's arguments, the Court finds respondent's position unpersuasive. The Court rejects, due to lack of evidentiary support, respondent's contention that the government already possesses all documents sought by the Subpoena. The Court likewise rejects respondent's argument, also on grounds of insufficient evidence and the fact that there are no pending charges, that the government here issued the Subpoena for the sole or dominant purpose of preparing for a trial. The Court continues to hold that the record-keeping provision of the BSA meets the three requirements for the required records exception set forth in *Grosso*. Thus, the records sought by the Subpoena are "required records" exempt from the Fifth Amendment privilege against self-incrimination. Because the required records exception applies, respondent must comply with the Subpoena.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 10, 2012
   Central Islip, NY

\* \* \*

Movant is represented by Loretta Lynch, U.S. Attorney, Eastern District of New York, 610 Federal Plaza, Central Islip, N.Y., 11722 by Jeffrey B. Bender and Mark W. Kotila, Trial Attorneys, Northern Criminal Enforcement Section Tax Division, U.S. Department of Justice. Respondent is represented by Brian P. Ketcham, Kostelanetz & Fink, LLP, 7 World Trade Center, New York, N.Y. 10007.

---

entity; that entity's seeking of the records from the appropriate bank; a foreign court's consideration of whether such records may in fact be produced; the corresponding appeal period applicable to any such determination; and the government's lack of any notification as to the status of its request following its initial transmittal, including lack of notification as to any judicial decisions issued or ongoing appeals concerning production of the documents. Each and all of these factors might significantly lengthen the record request process that the BSA sought to improve.